NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 2, 2023

S23A0420. THE STATE v. WILLIAMS.

ELLINGTON, Justice.

In connection with the shooting death of Sandra Fields in her home on March 28, 2021, Michael Williams was indicted in Telfair County on two counts of felony murder, burglary in the first degree, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The State filed notice of its intent to introduce evidence of other wrongs, crimes, or acts pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"). The State specified that the other-acts evidence would be offered as evidence of Williams's motive and intent in killing Fields and would include Williams's January 2017 arrest for family violence battery against another woman, Sommer Sheffield. After a hearing, the trial court ruled that evidence of the 2017 battery was inadmissible, on

the basis that the probative value of the evidence was substantially outweighed by undue prejudice. The State appeals the ruling pursuant to OCGA § 5-7-1 (a) (5), contending that the trial court misapplied the applicable balancing test and abused its discretion in excluding evidence of Williams's prior act of domestic violence. For the reasons explained below, we vacate the trial court's ruling and remand for the trial court to reconsider the matter under the proper framework.[1]

In arguing that evidence of the 2017 battery should be admitted in this case, the prosecutor stated that the State expected the evidence to show that, on March 28, 2021, Fields, who was in an sexual relationship with Williams, asked him to leave her home prior to the shooting and that he refused to do so and engaged in a physical struggle with her, which ended in her being shot and killed. The prosecutor also expected the evidence to show that there was a history of conflict between Williams and Fields and that in the past

---

[1] We note that the appealed order contained rulings on multiple evidentiary matters. Only the Rule 404 (b) ruling is at issue in this appeal; the remainder of the court's order is unaffected.

he had damaged her phone, which he used as "a mechanism of control" in their relationship. Based on Williams's pretrial statements about Fields's death, the State expected Williams to deny any intent to harm Fields, as specified in the predicate counts of aggravated assault and burglary, and to rely on a theory of accident and lack of intent as his main defense.[2] The State argued that Sheffield's testimony about the 2017 battery, including that Williams smashed her phone when she tried to call 911, would help in establishing motive, intent, and lack of accident.[3]

---

[2] In Williams's pretrial statements, he claimed that he and Fields argued at her home about a pickup truck; she told him to leave and went to her bedroom, leaving the door open. Williams stated that, before leaving the house, he needed to retrieve his blood pressure medication and went into Fields's bedroom where he found her standing at the end of the bed, holding a gun. Williams stated that Fields "racked a bullet" and pointed the gun at him with her finger on the trigger, and that, acting only to defend himself, he grabbed her right hand and the gun with his left hand, they struggled, and then the gun went off. Williams stated that the bullet grazed his head, and Fields immediately dropped to the ground. Williams stated that his vision was obscured by blood pouring down his face, and he did not realize at first that Fields had also been hit by the bullet. Williams stated Fields's grandchildren came out of their bedroom after the single shot was fired. In his appellate brief, Williams likewise claims that Fields brandished a gun when he went to get his medication from the bedroom, and the gun discharged as they struggled over it.

[3] See *Harrison v. State*, 310 Ga. 862, 868 (3) (855 SE2d 546) (2021) (Where the defendant claimed a fatal shooting was an accident, and there was

At a pretrial hearing on the admissibility of Williams's 2017 arrest for family violence battery, Sheffield testified as follows. For about eight months beginning in 2016 and ending in January 2017, she was in a sexual relationship with Williams, who was married at the time. Williams rented a house for Sheffield, and he stayed there with her sometimes. They smoked crack cocaine together. Three or four times during their relationship, they had "really bad argument[s]" about money and drugs. She described Williams as being mentally abusive, calling her "crack head and whore and stuff like that." Sheffield also described Williams as being "very controlling," and she was not "allowed to leave the house unless [she] notified him." She testified that he gave her drugs "to make [her] stay [at home] while he wasn't there." She testified that she violated

no direct evidence, aside from the defendant's own account, of how the shooting transpired, evidence that the defendant had a history of committing jealousy-fueled violent acts against a romantic partner had significant probative value in establishing that his conduct in the charged offenses was intentional and not accidental.); *Thompson v. State*, 308 Ga. 854, 858-860 (2) (843 SE2d 794) (2020) (Where the defendant's intent to commit aggravated assault against the victim, the predicate felony for felony murder, was an issue at trial because he claimed that the victim's injuries resulted from accidental falls, evidence that the defendant committed violent acts against the victim and other family members was probative of lack of accident in the charged offenses.).

4

his rule about staying home only once, "and it caused a big fight" and "a big uproar." Sheffield left to get food, and Williams arrived while she was away. When she returned to the house, Williams "was mad[,] and he took the food and threw it out the door and [was] very mad about that[,] and [they] started fighting." She told him to leave the home, but he did not leave, and the fight became physical. Sheffield "jumped on the bed" and dialed 911. "[A]s [she] was talking to dispatch[,] [she] got tackled into the wall[.] . . . [Williams] just shattered [her] phone." She was transported to the hospital where she was diagnosed with "a fractured eye socket and multiple fractures of [her] face." No other witnesses testified during the other-acts portion of the pretrial motions hearing.

> After the hearing, the trial court ruled that

> [t]he prior incident has similarities to the charged offense[s,] including a domestic dispute with a partner wherein [Williams] was requested to leave [the home], did not leave, and a physical altercation ensued. Pursuant to OCGA § 24-4-40[4] (b), the prior incident provides proof of motive and intent thus providing evidence relevant to an issue other than [Williams's] character.

The trial court ruled that evidence of the 2017 battery was

inadmissible, however, on the basis that Sheffield's testimony "regarding the domestic violence incident was intrinsically linked to [her] testimony regarding [Williams's] drug use and affair" and therefore "the probative value of [Sheffield's] testimony [was] substantially outweighed by its undue prejudice and shall not be admissible."

Given that there were no eyewitnesses to the discharge of the gun that killed Fields (other than Williams), the State argues that Sheffield's testimony about the 2017 battery will provide evidence that Williams's "violence was a mechanism for control of his intimate partners, a key piece in showing the jury why [he] lashed out at [Fields]," and would provide critical proof of his motive and intent to commit the charged offenses. The State contends that, as the other-acts evidence relates to Williams's infidelity, his wife, Angela Williams, called 911 inquiring about him on the night of Fields's death in 2021 and is a listed witness for the State and that, because the fact that Williams was married will already be before the jury, it can hardly be deemed unduly prejudicial to show that he

6

also cheated on his wife with Sheffield in 2017. The State contends that the trial court undervalued the probative value of the other-acts evidence and overvalued the prejudicial effect of the evidence and therefore abused its discretion when it excluded the evidence under Rules 403 and 404 (b).[4]

Except as limited by constitutional requirements or as otherwise provided by law, "[a]ll relevant evidence shall be admissible." OCGA § 24-4-402 ("Rule 402").[5] One such exception is provided in OCGA § 24-4-403 ("Rule 403"): "Relevant evidence may be excluded if its probative value is substantially outweighed by the

---

[4] The State also contends that the trial court erred in excluding Sheffield's testimony under "OCGA § 24-4-402 (b)," a Code section that does not exist. Although the trial court's order did refer to "OCGA § 24-4-402 (b)," it did so after stating that the State sought to admit the evidence under "OCGA § 24-4-404 (b)," and in the context of correctly articulating the Rule 404 (b) standard. We conclude that the references to "OCGA § 24-4-402 (b)" were merely scrivener's errors, and this claim of error therefore presents nothing for review.

[5] See OCGA § 24-4-401 (Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *Harris v. State*, 314 Ga. 238, 262 (3) (a) (875 SE2d 659) (2022) ("The test for relevance is generally a liberal one, and relevance is a binary concept – evidence is relevant or it is not[.]" (citations and punctuation omitted)).

7

danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The probative value of evidence "is a combination of its logical force to prove a point and the need at trial for evidence on that point." *Harris v. State*, 314 Ga. 238, 262 (3) (a) (875 SE2d 659) (2022) (citation and punctuation omitted). "Probative value also depends on the marginal worth of the evidence – how much it adds, in other words, to the other proof available to establish the fact for which it is offered." Id. If particular evidence would be cumulative of other evidence that will be admitted, the probative value of such additional evidence may be limited because of the presentation of other evidence on the same point. See id.

Even evidence that reflects on a person's character or a trait of character, which is inadmissible in order to show that the person acted in conformity with such character or trait,[6] may be admitted under Rule 404 (b) for other purposes, "including, but not limited to,

---

[6] See OCGA § 24-4-404 (a).

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Under this statutory framework,

> extrinsic act evidence may be admitted if a three-part test is met: (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

*West v. State*, 305 Ga. 467, 473 (2) (826 SE2d 64) (2019) (citation omitted). "Rule 404 (b) is a rule of inclusion and Rule 403 is an extraordinary exception to that inclusivity." Id. at 474 (2) (citation omitted).

Inculpatory or incriminating evidence, in that it tends to show that the defendant was involved in a crime or other wrongdoing, is inherently unfavorable to the defendant. *Morgan v. State*, 307 Ga. 889, 897 (3) (c) (838 SE2d 878) (2020). "[I]t is only when *unfair* prejudice substantially outweighs probative value that Rule 403 permits exclusion." Id. (citation and punctuation omitted). "Rule 403's term 'unfair prejudice' speaks to the capacity of some

9

concededly relevant evidence to lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged." *Harris*, 314 Ga. at 263 (3) (a) (citation omitted). See also *Morgan*, 307 Ga. at 897 (3) (c) (Evidence may be unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (citation and punctuation omitted)). "The exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Jones v. State*, 311 Ga. 455, 464 (3) (b) (ii) (858 SE2d 462) (2021) (citation and punctuation omitted). See also *Pike v. State*, 302 Ga. 795, 801 (4) (809 SE2d 756) (2018) ("[I]n close cases, balancing under Rule 403 should be in favor of admissibility of the evidence."). In particular, when other-acts evidence is presented to show intent,

> Rule 403 requires a case-by-case, common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense. These circumstances include the prosecutorial need for the other-acts evidence, the other-act's overall similarity to the charged crimes, and its temporal remoteness.

*Jones*, 311 Ga. at 464 (3) (b) (ii) (citation and punctuation omitted).

We review a trial court's decision regarding other-acts evidence under the statutory framework for an abuse of discretion. See *Harris*, 314 Ga. at 262 (3) (a); *State v. Atkins*, 304 Ga. 413, 417 (2) (c) (819 SE2d 28) (2018). The discretion a trial court exercises in balancing evidence's probative value against the danger of unfair prejudice "is broad, but it is not unlimited. Such discretion does not sanction exclusion of competent evidence without a sound, practical reason." *Atkins*, 304 Ga. at 422 (2) (c) (citation and punctuation omitted). Even where, as in this context, "a trial court's ultimate ruling is subject to only an abuse of discretion review, the deference owed the trial court's ruling is diminished when the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree." Id. at 417 (2) (citation and punctuation omitted). In such a case, the appellate court should remand the case to the trial court for it to exercise its discretion using adequate factual findings and the correct legal analysis. See id. at 422-423 (2) (c).

In this case, as quoted above, the trial court concluded that the probative value of Sheffield's testimony as proof of motive and intent was substantially outweighed by its undue prejudice because evidence of the 2017 battery was intrinsically linked to evidence that Williams engaged in an extra-marital affair with Sheffield, used illegal drugs, and provided drugs to her.[7] Given that the State intends to call Williams's wife as a witness, the extramarital nature of Williams's relationship with Fields in 2021 will be in evidence. Particularly in light of this other evidence of Williams's infidelity, evidence that Williams's relationship with Sheffield in 2017 was also extramarital has exceedingly low prejudicial impact. See *Harris*, 314 Ga. at 270-280 (3) (e) (3). Thus, that aspect of the other-acts evidence was entitled to very little weight in the trial court's balancing of the

---

[7] Given that the State's objective was to elicit evidence that Williams had abused a prior domestic partner, damaging the victim's phone as a means of controlling her, and violently injured the victim after she instructed him to leave her home, we question the trial court's conclusion in deeming Williams's drug use as "intrinsic" to the 2017 domestic violence incident. See *Harris*, 314 Ga. at 295-296 (7). The State's examination of Sheffield could have been tailored to minimize or eliminate any undue prejudice, particularly when paired with appropriate limiting instructions to the jury. We do not need to determine, however, whether the trial court abused its discretion in this regard, because we are vacating its ruling on other grounds.

probative value against any unfair prejudice, and the trial court erred in that regard. We therefore vacate the trial court's ruling and remand for the trial court to perform the balancing test anew, weighing the probative value of Sheffield's testimony against any undue prejudice resulting from the evidence's connection to Williams's drug use, the only other factor the trial court relied upon. See *Atkins*, 304 Ga. at 417 (2) (c).

*Judgment vacated in part, and case remanded. All the Justices concur.*