317 Ga. 689
FINAL COPY

S23A0871.  CARTER v. THE STATE.

ELLINGTON, Justice.

Pacer Sebastian Carter appeals his convictions for malice murder and other crimes in connection with the shooting death of Aramis O'Brad Peterson.[1] Carter contends that the omission of a

---

[1] The crimes occurred on January 6, 2017. On September 7, 2018, a Fulton County grand jury indicted Carter for malice murder, four counts of felony murder, and one count each of participation in criminal street gang activity, aggravated assault, possession of marijuana with intent to distribute, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. After a jury trial that ended on August 25, 2021, Carter was found guilty on all counts. On September 1, 2021, Carter was sentenced to serve life in prison without the possibility of parole for malice murder, concurrent prison terms of twenty years for the gang-activity count, ten years for the marijuana-possession count, and five years for possession of a firearm by a convicted felon, and a consecutive five-year prison term for possession of a firearm during the commission of a felony. The felony murder counts were vacated by operation of law, and the aggravated assault count was merged into the malice murder conviction for sentencing purposes. Carter filed a premature motion for new trial on August 31, 2021, which ripened upon the entry of judgment, see *Southall v. State*, 300 Ga. 462, 464-467 (1) (796 SE2d 261) (2017), and he amended that motion through new counsel on September 8, 2022. After a hearing on December 7, 2022, the trial court denied the amended motion for new trial on March 6, 2023. Carter filed a timely notice of appeal, and the case was docketed in this Court to the August 2023 term and submitted for a decision on the briefs.

jury instruction on the statutory requirement of corroboration of accomplice testimony in felony cases was plain error and resulted from the ineffective assistance of his trial counsel, and that the trial court erred in admitting a document entitled "Proof of Incarceration." Because both claims of trial court error are subject to review only for plain error, and Carter has failed to carry his burden of showing either plain error or the ineffective assistance of his trial counsel, we affirm.

The evidence submitted at trial shows the following. A few months before Peterson was killed, Carter was robbed and shot in the face by a man visiting the "trap house" from which Carter's fellow gang members sold drugs. The shooter in that prior incident drove away in a "gray BMW" and was described by Carter as having a money-bag tattoo on his face.

On the evening Peterson was killed, Carter and several other gang members were present at their trap house. One gang member, Anthony Norman, testified that Carter received a phone call, that Carter said the caller was the one who had shot him, and that people

2

at the house then armed themselves. About half an hour later, Peterson called a member of Carter's gang, parked his dark-colored BMW in front of the house, and was "hesitant" to get out of the car, but after two or three minutes, he walked up to the house, leaving his two young sons and two adult friends in the car.

Peterson was let inside the house, and Norman testified that Peterson was trying to hide a facial tattoo. According to another witness, Maria Johnson, Carter shouted that Peterson was the one who had shot him, and Peterson dropped a gun that discharged. Norman testified that Carter then shot Peterson with a .357-caliber revolver, which Norman had purchased a few days earlier to keep in the house, and that Carter chased Peterson out the front door and continued to shoot. Norman was the only eyewitness to directly identify Carter as the shooter, although Johnson testified about Carter's identification of Peterson, and other witnesses confirmed Carter's presence at the house. Peterson was shot five times, fell in the street, and died.

Peterson's older son testified that in the same area where he

saw the flash of gunfire, he saw someone who had a firearm in his hand and dreadlocks to the middle of his neck. A detective testified as an expert on Carter's gang that "trust[ed]" members of the gang operated and maintained the trap house and kept access to it "very restricted" and "controlled," and that Carter was the only person associated with the house who had dreadlocks at the time of the shooting. A search of the house yielded, among other things, money, marijuana, cocaine, a .357-caliber revolver with six spent rounds, other firearms, and ammunition, as well as items labeled with Carter's name or nickname, including government paperwork, prescriptions, a pill bottle, and the "Proof of Incarceration" with a photograph of Carter with dreadlocks.

1. Carter contends that the trial court should have instructed the jury that a felony conviction cannot be sustained by the uncorroborated testimony of an accomplice. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single

4

witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason."). Because Carter's trial counsel did not request an accomplice-corroboration instruction or object to the omission of that instruction, Carter raises the claim as both plain error and ineffective assistance of counsel.

To establish plain error, Carter would have to show, among other things, that the alleged error likely affected the outcome of his trial. See *State v. Johnson*, 305 Ga. 237, 240 (1) (824 SE2d 317) (2019) ("The third prong of the plain error test requires that the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it likely affected the outcome of the trial court proceedings."). See also *Jackson v. State*, 306 Ga. 69, 83 (4) (a) (829 SE2d 142) (2019) ("[E]ven a *clear* error is *plain* error only if it likely affected the outcome of the proceedings." (emphasis in original)). And to prove his claim of ineffective assistance, he would have to show not only that the failure of his trial counsel to object was professionally deficient, but

also that "but for such deficient performance, there is a reasonable probability that the result of the trial would have been different." *Dixon v. State*, 309 Ga. 28, 36 (3) (843 SE2d 806) (2020). "This Court has equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim." *Jackson,* 306 Ga. at 84 (4) (b) (citation and punctuation omitted); see also id. at 84-85 (4) (b) (holding that, even assuming that trial counsel performed deficiently in not requesting an accomplice-corroboration instruction, the appellant had not shown prejudice for the reasons explained in reviewing the absence of that instruction for plain error).

Pretermitting whether Carter affirmatively waived this alleged error in the jury instructions, whether Norman could be considered an accomplice, and whether the failure to give the instruction was error, Carter has failed to establish that he was prejudiced by the omission of an accomplice-corroboration instruction. The independent evidence at trial corroborating Norman's testimony was substantial and consistent. That evidence

6

included identification of the shooter by Peterson's son as having dreadlocks; identification of Carter as the only person with dreadlocks who was present at the trap house; testimony that Carter communicated a motive of revenge just before the shooting, which was supported by evidence that Carter's prior assailant had a facial tattoo like Peterson's and drove a car matching the description of Peterson's car; and the recovery of photographs of Carter at the crime scene, other items labeled with his name, and a .357-caliber revolver with six spent rounds. As a result of this substantial evidence corroborating Carter's involvement in the crimes, an accomplice-corroboration instruction likely would not have caused the jury to return a different verdict. See *Lewis v. State*, 311 Ga. 650, 666 (4) (859 SE2d 1) (2021) (holding that there was no plain error in not giving the accomplice-corroboration instruction, because there was a "substantial amount" of evidence corroborating the accomplice's testimony, making it unlikely that the outcome of the trial was affected; distinguishing a case where "almost all of the evidence incriminating" the defendant came from an accomplice);

7

*Rice v. State*, 311 Ga. 620, 624-625 (1) (857 SE2d 230) (2021) (holding that there was no plain error where "substantial and consistent evidence" showed the defendant's participation in the crimes, such that the failure to give the accomplice-corroboration charge likely did not affect the outcome of the trial). Accordingly, Carter's claims of plain error and ineffective assistance of counsel predicated on the omission of an accomplice-corroboration jury charge both fail. See *Jackson*, 306 Ga. at 84-85 (4) (b).

2. Carter also contends that the trial court erred in admitting the document entitled "Proof of Incarceration" because it was either irrelevant or substantially more prejudicial than probative under OCGA § 24-4-403 ("Rule 403"). This enumeration can be reviewed only for plain error, which Carter has failed to establish.

The "Proof of Incarceration" was found inside the trap house and includes such details as Carter's name, birthdate, and photograph, his incarceration date of December 20, 2016, and his release date of January 5, 2017, which was the day before Peterson's murder. During trial, outside the presence of the jury, the parties

8

discussed the admissibility of four other documents — none of which was the "Proof of Incarceration" — that were found in a notebook at the crime scene and that related to Carter's incarceration but did not specify a release date. Carter objected that those four documents (which ultimately were not admitted into evidence) added nothing to the evidence of identity and included the information that he had been arrested for and charged with possession of a firearm by a convicted felon. When the State subsequently offered the Proof of Incarceration to show that Carter was released on January 5, 2017, Carter objected because it was unclear where the document came from and where in the house it was found, and he later renewed his objection based on a lack of proper "foundation" and his prior objection based on "any reference to the firearm charge." The trial court stated that the State had to lay a foundation for admission of the Proof of Incarceration and would have to redact the firearm charge. During subsequent examination of the lead detective, the State laid a foundation and offered the redacted Proof of Incarceration into evidence, and defense counsel responded, "[n]o

9

objection." As a result, Carter no longer contends either that a proper foundation for admission of the document was lacking or that a firearms charge was referenced in the document.

Because Carter never objected to the Proof of Incarceration on the grounds that he now raises on appeal, we consider only whether the trial court committed plain error in admitting this evidence. See *Huff v. State*, 315 Ga. 558, 566 (3) (883 SE2d 773) (2023) (Because defense counsel objected to certain testimony only on the ground that the State was improperly bolstering the testimony of a previous witness, and not "on any other ground, Appellant did not preserve for ordinary appellate review the contentions raised here, namely, that the testimony was improper character evidence, irrelevant, and inadmissible under OCGA § 24-4-403."); *Castillo-Velasquez v. State*, 305 Ga. 644, 652 (4) (827 SE2d 257) (2019) (Because the defendant objected to the admission of the victim's clothes only on the ground that the evidence was not relevant, but contended on appeal only that it should have been excluded under Rule 403, "we consider[ed] only whether the trial court committed plain error in admitting the

evidence."). To establish plain error in the trial court's admission into evidence of the Proof of Incarceration, Carter "must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. at 653 (4) (citation and punctuation omitted). "Moreover, . . . to establish that the error affected his substantial rights, he must demonstrate that it caused him harm, meaning that the outcome of the trial court proceedings was likely affected." Id. (citation and punctuation omitted). "We need not analyze all of the elements of this test when, as in this case, the defendant has failed to establish one of them." *Early v. State*, 313 Ga. 667, 672 (2) (b) (872 SE2d 705) (2022) (citation and punctuation omitted).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401 ("Rule 401"). "Generally, relevant

evidence is admissible. See OCGA § 24-4-402. The standard for relevance is a liberal one, and relevant evidence is admissible even if it has only slight probative value." *Wilson v. State*, 315 Ga. 728, 738 (8) (883 SE2d 802) (2023) (citation and punctuation omitted). Nevertheless, "[r]elevant evidence may be excluded if its probative value is substantially outweighed[, inter alia,] by the danger of unfair prejudice[.]" Rule 403. "But the exclusion of evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." *Wilson*, 315 Ga. at 738 (8) (citation and punctuation omitted). "The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point." *State v. Williams*, 316 Ga. 249, 252 (887 SE2d 285) (2023) (citation and punctuation omitted). "Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered." Id. (citation and punctuation omitted). "[P]rejudice is not 'unfair' simply because it tends to inculpate the defendant in an awful crime. Inculpatory evidence is inherently

prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that Rule 403 permits exclusion." *Wilson*, 315 Ga. at 738 (8) (citation and punctuation omitted; emphasis in original). The prejudicial effect of evidence is "unfair" if it has "the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged, or an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Id. (citation and punctuation omitted).

It was not "clear and obvious beyond reasonable dispute" that the Proof of Incarceration was irrelevant under the liberal standard of Rule 401. Because that document was found in the trap house and contained a picture of Carter with dreadlocks, the State makes a reasonable argument that the document tended to make it "more probable" that Carter was present in the trap house with dreadlocks like the shooter and that such presence and appearance was "of consequence" to the determination of who murdered Peterson. See Rule 401. Moreover, the State reasonably argues that the document placed Carter at the scene of the crime within a "very limited

13

window" of time. In other words, because Carter did not receive the document until he was released from prison the day before the murder and could not have left it at the house until after his release, the presence of the document at the house at the time of the murder made it more likely that Carter was present at the house beginning one day or less before the murder, rather than merely on some earlier dates. Furthermore, it was not "clear and obvious beyond reasonable dispute" that the document's probative value was substantially outweighed by the risk of unfair prejudice. The State argues, for the reasons just discussed, that the Proof of Incarceration had a "high probative value as to identity." Specifically, the document tended to make it more probable that Carter was present at the crime scene near the time of the murder and, therefore, the document had significant "marginal worth" to corroborate the testimony related to Carter's presence and involvement and to surpass the probative value of the other items from the trap house belonging to Carter. See *Williams*, 316 Ga. at 252. The State further argues that the risk of unfair prejudice was minimal because the

jury knew that Carter was a convicted felon and because the trial court mitigated any prejudice by redacting the charges from the Proof of Incarceration. See *Early*, 313 Ga. at 671 (2) (b) (analyzing the risk of unfair prejudice under Rule 403 and holding that evidence of the defendant's incarceration for several months after being arrested would not unfairly influence the jury). These arguments by the State are reasonable. Thus, the admission of the Proof of Incarceration did not violate Rule 403 such that it would constitute a clear or obvious error not subject to "reasonable dispute." See *Strother v. State*, 305 Ga. 838, 848 (4) (d) (828 SE2d 327) (2019) (where this Court, in analyzing whether the admission of certain evidence would qualify as a clear or obvious error under Rule 403, considered whether such admission was a "blatant abuse of discretion" and determined that it was not). Accordingly, Carter has failed to establish plain error, and this claim therefore fails.

*Judgment affirmed. All the Justices concur.*

Decided November 7, 2023.

Murder. Fulton Superior Court. Before Judge Carnesale.

*Kevin A. Anderson*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Virginia L. Davis, Alex M. Bernick, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.