**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 23, 2024**

# In the Court of Appeals of Georgia

A24A1011. FRADY v. THE STATE.

BROWN, Judge.

David Lee Frady was jointly indicted with eleven other individuals in a 27-count indictment. Following a jury trial, Frady was convicted of burglary in the first degree, forgery in the first degree, and violating the Georgia Racketeering Influenced and Corrupt Organizations Act ("RICO"). On appeal, Frady contends that the trial court erred by refusing to grant him a new trial under the exercise of its discretion as a "thirteenth juror"; that the trial court abused its discretion in admitting certain evidence; that he received ineffective assistance of counsel; and that the cumulative prejudice from errors at trial deprived him of a fair trial. For the reasons explained below, we reverse Frady's convictions.

Our resolution of this case requires an assessment of harm resulting from plain error.

> The test for nonconstitutional harmless error is similar to the determination of prejudice under plain error review, with the principal difference being the party that bears the burden of proof. For nonconstitutional harmless error, the State has the burden to show that it was highly probable that the error did not contribute to the verdict. But to establish plain error, a defendant has the burden of making an affirmative showing that the error probably did affect the outcome below. In both circumstances, we review whether the error prejudiced the outcome of the trial.

(Citations and punctuation omitted.) *Bozzie v. State*, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017). See also *State v. Lane*, 308 Ga. 10, 21 (4), n.12 (838 SE2d 808) (2020) (equating the requirement that defendant must show, among other things, that the error probably affected the outcome below under plain error review, with the prejudice prong for an ineffective assistance of counsel claim). But see *Allen v. State*, 310 Ga. 411, 417 (4) (851 SE2d 541) (2020) (in assessing whether two assumed errors by trial court, one subject to plain error review and one subject to harmless error review, amounted to cumulative harm, Supreme Court noted that it need not decide how "multiple standards for assessing prejudice may interact under cumulative review

of different types of errors" because defendant's claims failed under any of the standards). "In the context of determining prejudice, [appellate courts] review the record de novo. In doing so, we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case." (Citation and punctuation omitted.) *Woodard v. State*, 296 Ga. 803, 810 (3) (b), n.5 (771 SE2d 362) (2015).

### The Initial Investigation and Search

In 2019, the Rabun County Sheriff's Office opened an investigation into suspected methamphetamine distribution by Frady and others. During the investigation, police monitored Frady's residence and noticed multiple people coming and going from the property in "short duration stays," which police believed was consistent with the distribution of narcotics. Based on this activity, police conducted traffic stops. One stop led to the arrest of three people, including Elias Lambert, Frady's co-indictee, for possession of methamphetamine and a sawed-off shotgun.[1]

---

[1] During Frady's trial, the State presented evidence that Lambert pleaded guilty to possession of methamphetamine, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony.

Police also observed multiple surveillance cameras scattered throughout Frady's property, "not as you would typically see at a residence."

During this time period, police received a report that Frady's son, Michael, had admitted to stealing property from a neighbor, which led to a search of the son's camper home on Frady's property, as well as Frady's home. In the main residence where Frady resided with his wife, police found methamphetamine residue on top of an open safe and digital scales in a spare bedroom. Frady indicated that Terry Young, a co-indictee, had been staying in the spare bedroom. Police also noticed that the surveillance cameras were being monitored on a television in the home's main bedroom.

*The Counterfeit Bills*

On September 2, 2019, Frady made a purchase at a Dollar General with a counterfeit $100 bill. The cashier realized it was counterfeit when she looked at the bill but accepted it anyway to avoid confrontation. After closing, the police arrived and collected the bill. A special agent with the United States Secret Service who investigates counterfeit currency testified that he examined the bill and confirmed it was counterfeit. According to the agent, it was a genuine bill of some denomination

but had been bleached and then the markings for a $100 bill had been printed onto the bill with an inkjet printer. The agent also testified that a database showed that a bill with the same serial number and denomination had been passed off on four prior occasions in the same area in 2019. Frady was arrested and, shortly after, his son also was arrested for passing a counterfeit $100 bill at a Krystal's.

*The Burglary of the Neighbors' Home and Second Search*

On September 24, 2019, Frady's neighbors contacted police to report that their home had been burgled. The neighbors had not been to the home since May 2019, and returned to find it ransacked and destroyed. One officer dispatched to the neighbors' home crossed paths with Frady's son and the son's girlfriend on an ATV. The officer stopped the pair and recovered a backpack that Frady's son had thrown into the grass. Inside the backpack were debit cards with the neighbors' names as well as a trafficking amount of methamphetamine.

Police obtained a search warrant for Frady's property and recovered much of the neighbors' stolen property from the son's camper as well as some stolen items inside Frady's house in a spare bedroom (the same bedroom in which the co-indictee had previously stayed according to Frady). Other items were recovered from the

homes of other co-indictees.[2] The neighbor testified that many of the items taken from their home were never recovered, including sentimental items like a wedding dress, wedding photos, furniture passed down from family, photo albums, and wedding bands. The police also never recovered the majority of the victims' gun collection. Many items not taken were destroyed, and the victims' home was left in deplorable condition with trash and feces on the floor.

While executing the search warrant for Frady's home, police discovered "wet" counterfeit $100 bills hanging on Frady's kitchen wall to dry out. A woman testified that at one point, she was in need of money, and a friend brought her to the Frady property. While there, she saw Frady printing counterfeit money.

*The Other-Act Evidence*

During Frady's trial, the State presented other-act evidence pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"). Specifically, an investigator testified that while he was assigned to the Appalachian Regional Drug Enforcement Office ("ARDEO"), a regional drug enforcement office supervised by the Georgia Bureau of Investigations,

---

[2] Police also found methamphetamine and scales in one co-indictee's house, as well as small baggies, digital scales, methamphetamine, and a syringe in a second co-indictee's house.

in September 2017, he worked a narcotics case involving methamphetamine against Frady. During the investigation, a confidential informant made a controlled purchase of $200 of methamphetamine from Frady. During a subsequent search of Frady's home, ARDEO seized an unspecified amount of marijuana from a safe, a pipe with methamphetamine residue from a bathroom, and 46 firearms — four of which were stolen and three of which had serial numbers defaced — throughout the home. Frady and his son, Michael, were then arrested and charged in a joint accusation. Frady was charged with possession of marijuana with intent to distribute, four counts of theft by receiving stolen property, three counts of criminal use of an article with an altered identification mark, and possession of methamphetamine. Michael Frady was only charged with possession of methamphetamine and possession of a drug-related object. In 2021, Frady pleaded guilty to possession of marijuana with intent to distribute and one count of criminal use of an article with an altered identification mark. The trial court admitted a certified copy of the accusation, plea, and sentence in that case. The trial court also admitted a certified copy of a 2019 accusation charging Frady with the sale of methamphetamine based on the sale to the confidential informant, and an order nolle prossing that charge based on Frady's guilty plea in the related case. In a pretrial

7

hearing, the trial court ruled this evidence admissible for the purpose of showing motive, intent, knowledge, absence of mistake or accident, and found that the prejudicial effect did not substantially outweigh the probative value of the evidence. The trial court did not give a limiting instruction when this evidence was admitted, and its charge to the jury at the close of trial did not identify the purpose for which this evidence was offered.

### *The Indictment and Trial*

Frady was indicted in a 27-count indictment with 11 other individuals, including his wife, his son, and his son's girlfriend. Frady was charged with conspiracy to violate the RICO Act under OCGA § 16-14-4 (c) (Count 1), burglary (Count 2), forgery (Count 3), theft by receiving (Count 4), conspiracy to commit burglary (Count 6), and theft by taking (Count 7). The indictment alleged that Frady and his co-indictees, from January 1, 2019, to November 1, 2019, "did unlawfully conspire with each other and endeavor to acquire and maintain, directly and indirectly, an interest in and control of property, to wit: money, and property belonging to [Frady's neighbors], Dollar General and Krystal, through a pattern of racketeering activity. . . ." The indictment further alleged that Frady "headed a criminal RICO organization and

8

conspiracy . . . that distributed methamphetamine, supplied by [co-indictee] Elias Lambert, passed counterfeit money and burglarized [the neighbors'] residence[.]" The indictment alleged acts of racketeering concerning (1) the trafficking and possession with intent to distribute methamphetamine and clonazepam; (2) the burglary of the neighbors' home; and (3) forgery (the counterfeit money). Two RICO predicate crimes were alleged against Frady: (1) entering the neighbors' home with the intent to commit theft therein and (2) passing a counterfeit $100 bill at Dollar General on September 2, 2019. Prior to trial, the State nolle prossed counts 4, 6, and 7, and proceeded to trial on counts 1, 2, and 3. The trial court granted Frady's motion to sever his trial from that of his co-indictees. The jury found Frady guilty on all counts and the trial court subsequently denied his motion for new trial, as amended.

1. Frady contends that the trial court failed to properly apply the "thirteenth juror" standard and that the trial court's denial of his motion for new trial on the general grounds was "both erroneous and an abuse of discretion" because the court "failed to critically engage with the evidence" and "misapplied legal principles." Frady argues that this Court should reverse the trial court's decision and remand the case for a new trial.

"Even when the evidence is legally sufficient to uphold a conviction, a trial judge may grant a new trial if the verdict of the jury is contrary to the principles of justice and equity, OCGA § 5-5-20, or if the verdict is decidedly and strongly against the weight of the evidence, OCGA § 5-5-21." (Punctuation omitted.) *Thompson v. State*, 318 Ga. 760, 765 (2) (b) (900 SE2d 607) (2024). "When these so-called 'general grounds' are properly raised in a timely motion for new trial, the trial judge must exercise a broad discretion to sit as a 'thirteenth juror.'" (Citation and punctuation omitted.) *King v. State*, 316 Ga. 611, 616 (2) (889 SE2d 851) (2023). Contrary to Frady's assertion, the merits of the trial court's decision on the general grounds are not subject to appellate review, and "the decision to grant a new trial on the general grounds is vested solely in the trial court." (Citation and punctuation omitted.) *King*, 316 Ga. at 616 (2). See also *McDaniel v. State*, 367 Ga. App. 376, 378 (b) (885 SE2d 245) (2023).

To the extent Frady argues the trial court failed to exercise its discretion as the thirteenth juror, we disagree. In its order denying his motion for new trial, the court "[a]cknowledg[ed] [its] duty to consider the evidence at trial under the 'thirteenth juror' standard [under] OCGA §§ 5-5-20 and 5-5-21," and then expressly rejected

Frady's general grounds claim, finding that Frady was "not entitled to a new trial on the general grounds." See *Allen v. State*, 296 Ga. 738, 741 (2) (770 SE2d 625) (2015) (holding that record indicated that trial court properly exercised its discretion under OCGA §§ 5-5-20 and 5-5-21 when it stated during hearing that it would not grant a new trial as "the thirteenth juror"). See also *Massey v. State*, 346 Ga. App. 233, 236 (2) (816 SE2d 100) (2018) (we presume the trial court is aware of its discretion unless the record shows otherwise).

2. In related enumerations, Frady contends that the trial court erred by allowing the State to read portions of a transcript from his son's guilty plea during its cross-examination. He argues that the statements made by the son's counsel impermissibly placed character evidence before the jury over his objection.

Frady presented the testimony of his son, Michael Frady, who admitted that he and two other individuals charged in the joint indictment entered the neighbors' house and took their property in July 2019. According to Michael, no one told him to do it. During this period, Michael was sometimes living in the camper on his father's property, and he hid the stolen property inside the camper. At the time of his

testimony, Michael was incarcerated after pleading guilty to forgery, burglary, trafficking, and violation of RICO as charged in the joint indictment.

During its cross-examination of Michael, the State tendered and the trial court admitted a certified copy of a transcript of Michael's guilty plea hearing. The defense had no objection to the guilty plea or any of Michael Frady's sworn statements but objected to the State's use of statements by Michael's counsel during the plea, asserting it was hearsay. The trial court overruled the objection, concluding that "they are the words of his authorized agent, which is what attorneys are, speaking on his behalf in that proceeding, and it can be used . . . to impeach him . . . to the extent that [his testimony] is inconsistent." The State questioned Michael about a portion of the plea transcript in which his attorney spoke on his behalf to the court. The following portions of the transcript were read by the State during questioning:

> And I'm also not going to be making the traditional[ ] argument of, oh, my client is a good guy at heart, you just don't know him. I actually don't think he is a good guy. It might sound strange, but I actually don't think he is a particularly good guy. I don't think someone who does something like this could be a good guy.
>
> . . .
>
> Why is it he is not a good guy?
>
> . . .

And I think the answer is, the man who has raised him. When you are being raised by an absolute scumbag, a person who has been referred to as a criminal menace here, you don't have too much of a chance at that point.

. . .

David Frady, piece of garbage who I hope he's going to lose his upcoming trial and get locked up for a significant amount of time.

. . .

Now finally 2020 [Michael] has been locked up along with his father who was the ring leader here. He was the man who was undeniably . . . in charge of this entire operation and he was leading Michael Frady along with all of this.

. . .

And once again when your father is a criminal menace, how bit [sic] of a shot do you get at that point?

. . .

[Michael] is going to be able to come out as a person who has the ability to grow in a way that he hasn't be[e]n able to when he has this horrible father hovering above him leading him by the no[se], influencing him to be an awful person.

On appeal, Frady contends this was improper bad character evidence. Because Frady did not object to the evidence on this basis, we review for plain error. See *Huff v. State*, 315 Ga. 558, 566 (3) (883 SE2d 773) (2023) (Because defense counsel objected

13

to certain testimony only on the ground that the State was improperly bolstering the testimony of a previous witness, and not "on any other ground, Appellant did not preserve for ordinary appellate review the contentions raised here, namely, that the testimony was improper character evidence, irrelevant, and inadmissible under OCGA § 24-4-403."). Compare *Smith v. State*, 307 Ga. 263, 270 (2) (c) (834 SE2d 1) (2019) (where defendants objected to the State's use of recording on the basis that it contained improper character evidence, Supreme Court would review the trial court's admission of the recording over this objection for abuse of discretion); *Holt v. State*, 352 Ga. App. 504, 508-509 (2) (835 SE2d 336) (2019).

To establish plain error, Frady "must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." (Citation and punctuation omitted.) *Carter v. State*, 317 Ga. 689, 693 (2) (895 SE2d 295) (2023). And, in order "to establish that the error affected his substantial rights, he must demonstrate that it caused him harm, meaning that the outcome of the trial court proceedings was likely affected." (Citation and punctuation omitted.) *Castillo-Velasquez v. State*, 305 Ga. 644, 653 (4) (827 SE2d 257) (2019).

"Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (Citation, punctuation, and emphasis omitted.) *Doyle v. State*, 307 Ga. 609, 612 (2) (837 SE2d 833) (2020).

"Generally, the character of the defendant should not come into evidence unless he chooses to put his character in issue." *Garner v. State*, 346 Ga. App. 351, 358 (2), n.26 (816 SE2d 368) (2018). See also OCGA § 24-4-404 (a) ("[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion"); OCGA § 24-4-405 (b). Here, we do not find — and the State does not even contend — that Frady put his good character in issue. At no point during Michael Frady's testimony did he comment on Frady's character generally or on what kind of father or person he knew Frady to be. Thus, Frady did not offer Michael's testimony to establish a pertinent trait of character that would allow for rebuttal under OCGA § 24-4-404 (a) (1), and the State was barred from presenting any such evidence.[3] The admission of the

---

[3] Nor is there any contention that "character or a trait of character . . . is an essential element of a charge, claim, or defense" in this case. OCGA § 24-4-405 (b).

attorney's comments about Frady's character constitutes a clear and obvious error beyond reasonable dispute. See generally *United States v. Frady*, 456 U. S. 152, 163 (III) (A) (102 SCt 1584, 71 LE2d 816) (1982) (plain error includes that which is "so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it"). Cf. *Holt*, 352 Ga. App. at 507 (1) (a) (State's introduction of two types of good character traits of the victim without defendant having opened the door to such testimony was clear error not subject to dispute). Nor was the error affirmatively waived. See generally *Grullon v. State*, 313 Ga. 40, 44-47 (2) (867 SE2d 95) (2021). See also *State v. Parks*, 350 Ga. App. 799, 810 (1) (830 SE2d 284) (2019) (rejecting State's argument that defendant affirmatively waived claimed error based on defendant's failure to object to the challenged evidence at trial), overruled on other grounds, *Gallegos-Munoz v. State*, ____ Ga. ____ (2) (c), n.9 (__SE2d __) (Case No. S24G0214, Sept. 17, 2024).

Under the circumstances of this case, there is a strong likelihood that the trial court's error affected the outcome of Frady's trial. Michael Frady was the final witness to testify in Frady's trial, and the State's reading of the guilty plea transcript came at the end of his testimony. Thus, the transcript of the attorney's comments was

the last evidence the jury heard before the trial court's charges and jury deliberations. The jury was left with the resounding opinions of an attorney that Frady was "an absolute scumbag," "a criminal menace," "horrible father," and "piece of garbage" who was guilty of the charged crimes and deserved to be "locked up for a significant amount of time." The trial court's admission of the improper character evidence at the close of Frady's trial likely affected the outcome of the trial proceedings, seriously affects the fairness, integrity, or public reputation of judicial proceedings, and constituted plain error. Cf. *Holt*, 352 Ga. App. at 509-511 (2) (admission of impermissible bad character evidence of the defendant was not harmless error). We therefore reverse Frady's convictions. Because the evidence was legally sufficient to sustain Frady's convictions, he may be retried. See *Harris v. State*, 314 Ga. 238, 289 (6) (875 SE2d 659) (2022).

3. In light of our holding above, we do not reach Frady's remaining enumerations of error.

*Judgment reversed. Dillard, P. J., and Padgett, J., concur.*