## S09A0472. WATKINS v. THE STATE.

(676 SE2d 196)

MELTON, Justice.

Following a jury trial, Jason Donte Watkins appeals his conviction for the murder of his girlfriend, Tamarisol Durham, contending that his right to confrontation was violated because the jurors considered extra-judicial information during deliberations and that he received ineffective assistance of counsel.[1] We affirm.

In the light most favorable to the verdict, the record shows that, on the night of April 15, 2005, Watkins returned home where Durham, her two children, and her sister were waiting. Durham and Watkins went into the bedroom. Sitting in the living room, Durham's sister heard the couple arguing, and she heard Durham say that she was trying to leave the bedroom. Durham's sister next heard someone calling her name and a loud thump on the wall. Two to three minutes later, she heard a gunshot. She ran into the bedroom and found Durham lying at the bottom of the bed with a gunshot wound to her head. Watkins was kneeling on the floor with his hands on his head. When the police arrived, Watkins came out of his daughter's bedroom with his hands up. Sitting in the patrol car, Watkins stated, "I wish I would have killed me too. I wish I would have got me, then I wouldn't have to feel this way."

At the crime scene, detectives found a semi-automatic handgun and an empty shell casing at the foot of the bed. A firearms examiner with the State crime lab opined that the bullet taken from Durham's body likely had been fired from the gun recovered at the scene. Receipts recovered from the home showed Watkins had purchased this handgun.

This evidence was sufficient to enable the jury to find Watkins guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Watkins contends that his conviction must be reversed because one of the jurors discussed extra-judicial information with the

---

[1] On September 1, 2005, Watkins was indicted in Cobb County for the malice murder, felony murder, and aggravated assault of Durham, as well as possession of a firearm during the commission of a crime. Following a jury trial held on May 22-26, 2006, Watkins was found guilty of all crimes. Watkins was thereafter sentenced to life imprisonment for murder and five consecutive years for the possession of a firearm during the commission of a crime. The felony murder conviction was vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the conviction for aggravated assault was merged with the murder conviction for purposes of sentencing. Watkins filed a motion for new trial on June 22, 2006, and, after a substitution of counsel, he filed an amended motion on April 2, 2008. The motion for new trial was denied on May 15, 2008. This appeal was docketed in this Court on October 10, 2008, and orally argued before the Court.

other jurors during deliberations.

> Jurors generally are not permitted to impeach their verdict, but this rule does yield to a defendant's constitutional guarantees. Whether or not an exception should be made must be determined by the circumstances of the case. To set aside a jury verdict solely because of irregular jury conduct, this Court must conclude that the conduct was so prejudicial that the verdict is inherently lacking in due process.

(Punctuation and footnotes omitted.) *Butler v. State*, 270 Ga. 441, 444 (2) (511 SE2d 180) (1999).

At trial, Watkins argued that the shooting occurred by accident. He maintained that Durham had initially pulled the gun on him, that he tried to take it from her, and that during the struggle, the gun accidentally fired. The prosecution countered Watkins' accident defense, in part, by noting that, if events had happened in the manner he stated, there may have been some injury to his hands from the slide of the discharging weapon.

Watkins contends that, after jury deliberations had begun, Wesley Sivley, a juror, performed experiments at home with his own personal handgun to determine whether Watkins' version of an accidental shooting was plausible, despite the fact that Watkins did not receive any hand injuries from the discharging weapon. Watkins further contends that Juror Sivley used the results from this extra-judicial experimentation to convince another juror, Annie Mae Huill, to change her vote from not guilty to guilty.

At the motion for new trial hearing, witnesses provided conflicting testimony. Watkins' trial counsel testified that, following the trial, Juror Sivley told him that he had conducted an experiment at home and conveyed the results of this experiment to the other jurors. Juror Sivley directly contradicted this account. He testified that he did not perform any experiments at home of any type. He did convey his belief to the other jurors that an accidental shooting as contended by Watkins could not have happened without an injury to Watkins' hand caused by the sliding mechanism of the gun. This belief, however, was based on Juror Sivley's past experience with handguns, not any extra-judicial experimentation. Juror Huill testified that, during deliberations, she initially believed that Watkins was innocent. Then, Juror Sivley demonstrated to her that, had the shooting been accidental, Watkins would have injured his hands. Based on this demonstration, Juror Huill decided to change her vote to "guilty." Although Juror Huill initially stated that Juror Sivley "said how he went home and how he kind of, like, played out the scene concerning the gun," she later gave equivocating testimony that she could not

remember any details about Juror Sivley performing any experiments at his home with his own gun. Finally, a third juror testified that, although he remembered one juror discussing his personal knowledge of handguns, he had no memory of that juror discussing any extra-judicial information. After considering this testimony and the credibility of the witnesses, the trial court found, as a matter of fact, that no extra-judicial experimentation had been established.

On appeal, Watkins again argues that the extra-judicial experimentation occurred, basing his contentions on the testimony of his trial counsel and Juror Huill. However, "it is the function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony." (Citation omitted.) *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995). In this case, the trial court chose to credit Juror Sivley's testimony that no extra-judicial experimentation occurred. This Court has no power to overturn that credibility determination. Id. The trial court did not err. See *Gardiner v. State*, 264 Ga. 329 (2) (444 SE2d 300) (1994) (contention that an attorney sitting as a juror provided other jurors legal information did not trigger exception to rule that jurors cannot impeach their verdicts).

2. Watkins contends that he received ineffective assistance of counsel in a number of ways. To prove ineffective assistance of counsel, Watkins must establish that

> counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). "When ruling on a claim of ineffective assistance, this Court does not evaluate counsel's trial tactics and strategic decisions in hindsight." (Footnote omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004).

Watkins first contends that his trial counsel was ineffective because he failed to properly interview Detective John Dawes before calling him as a witness at trial. The record shows that the State originally intended to call Dawes as a blood spatter expert but decided not to do so. Intrigued by the State's change of course, Watkins' trial counsel called Dawes and discussed the crime scene and evidence with him. On the basis of this discussion, trial counsel believed that Dawes' testimony would support Watkins' defense of accident. At trial, however, Dawes' testimony differed from the

information he relayed to trial counsel over the phone, and trial counsel was surprised by the testimony, which ultimately supported the State's contention that the shooting was not accidental.

> It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics, *Simpson v. State*, 277 Ga. 356 (4) (c) (589 SE2d 90) (2003), and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances. [Cits.]

*Walker v. State*, 281 Ga. 521, 526 (7) (640 SE2d 274) (2007). In this case, it cannot be said that trial counsel's decision to call Dawes as a witness was so unreasonable. See, e.g., *Browne v. State*, 261 Ga. App. 648 (2) (583 SE2d 496) (2003).

Watkins next contends that his trial counsel provided ineffective assistance because he failed to object to testimony from Leigh Ann Champion, a GBI toxicologist, regarding Durham's blood alcohol level at the time of her death. The blood alcohol testing was originally performed by Della Smith, and that testing was later subjected to a peer review by Champion, who reviewed the testing procedures and data gathered by Smith for accuracy. By the time of trial, Smith was no longer employed by the GBI, so Champion testified about the blood test and the results of her peer review. Watkins argues that this testimony was improper because Champion was acting as a mere conduit for Smith's hearsay findings. The record does not support this contention. Rather than being a mere conduit for Smith's findings, Champion reviewed the data and testing procedures to determine the accuracy of Smith's report. An expert may base her opinions on data gathered by others. See *Byrd v. State*, 261 Ga. App. 483 (583 SE2d 170) (2003). As a result, Champion's testimony was properly admitted into evidence, id., and Watkins' trial counsel did not provide ineffective assistance by failing to object to this admissible evidence. Moreover, even if this evidence was improperly admitted, Watkins has failed to provide any showing that, in the absence of such evidence, there is a reasonable probability that the outcome of his trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 695 (104 SC 2052, 80 LE2d 674) (1984).

Finally, Watkins contends that trial counsel rendered ineffective assistance by failing to object when, on cross-examination, the State asked Watkins whether he was familiar with "the cycle of violence" that occurs in some domestic relationships. Watkins now argues that, at the time that the State asked this question, there had been

no testimony supporting any inference that Watkins had previously harmed Durham, and, as a result, the State was allowed to improperly draw Watkins' character into question. The record reveals, however, that prior to Watkins' cross-examination, Durham's sister testified that she had witnessed Watkins threaten Durham, choke her, and pull her hair at times in the past. Therefore, contrary to Watkins' argument, there was, in fact, evidence of prior confrontations with Durham. Moreover, the State's questions followed Watkins' assertion that he had never hit, choked, or grabbed Durham at any time. The State's question was proper, and "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance." *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 2009.

*Ronald S. Boyter, Jr.*, for appellant.

*Patrick H. Head, District Attorney, Grady A. Moore, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.