**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 7, 2014**

# In the Court of Appeals of Georgia

A14A0858. DENSTAEDT v. THE STATE.

ANDREWS, Presiding Judge.

Following a jury trial, Matthew Denstaedt was convicted of driving under the influence of alcohol with an alcohol concentration of 0.08 grams or more (OCGA § 40-6-391 (a) (5)) and acquitted of speeding (OCGA § 40-6-181) and driving under the influence of alcohol to the extent that it was less safe to drive (OCGA § 40-6-391 (a) (1)). Denstaedt appeals from the denial of his motion for a new trial, arguing that he received ineffective assistance from his trial counsel because she failed to admit into evidence at trial print cards generated during a quarterly inspection of the Intoxilyzer 5000 used to test his alcohol concentration. Denstaedt cannot establish prejudice resulting from his trial counsel's alleged deficient performance, and we therefore affirm.

Viewed in the light most favorable to the jury's verdict, *Maloney v. State*, 317 Ga. App. 460 (731 SE2d 133) (2012), the evidence at trial showed that at approximately 2:24 a.m. on February 6, 2011, a Duluth police officer conducted a traffic stop after the officer saw Denstaedt driving a car at a high rate of speed as Denstaedt turned onto Georgia Highway 120 from Peachtree Industrial Boulevard. The officer approached the vehicle, and as he advised Denstaedt of the reason for the stop, the officer noticed that Denstaedt was fumbling with his wallet. The officer immediately noticed an overwhelming odor of alcoholic beverage coming from the vehicle. When the officer asked Denstaedt about his consumption of alcohol, Denstaedt admitted to consuming three beers. The officer also observed that Denstaedt's speech was slurred and that his eyes were red and watery.

Denstaedt agreed to submit to standardized field sobriety evaluations, exited his car, and walked to the rear of the vehicle. The officer performed the Horizontal Gaze Nystagmus (HGN), the walk and turn, and one-leg stand evaluations. The officer observed six out of six clues on the HGN evaluation, one of eight clues on the walk and turn, and no clues on the one-leg stand. The officer testified that, based on his experience, six out of six clues on the HGN evaluation means that an individual is a less safe driver due to alcohol and over the per se legal limit.

2

The officer asked Denstaedt to submit to an alcosensor evaluation, and Denstaedt's breath sample tested positive for the presence of alcohol. The officer then placed Denstaedt under arrest for driving under the influence and read Denstaedt Georgia's implied consent warning for suspects over the age of 21. Denstaedt agreed to submit to a breath test, and the officer transported Denstaedt to the City of Duluth Police Department for a breath test on the Intoxilyzer 5000. The officer testified that he was certified by the Georgia Bureau of Investigation, Division of Forensic Sciences to administer tests on an Intoxilyzer 5000, and a copy of his permit was entered into evidence. The State also entered into evidence certificates of inspection for the quarterly inspections of the Intoxilyzer performed on November 26, 2010 and February 14, 2011. In compliance with OCGA § 40-6-392 (f), each certificate represented that the Intoxilyzer had been thoroughly inspected, tested, and standardized and that "all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order." The officer stated that the Intoxilyzer 5000 appeared to be functioning properly on the morning of Denstaedt's test. Prior to accepting Denstaedt's breath sample, the machine conducted a diagnostic check, which revealed no problems. Denstaedt provided breath samples at 2:57 a.m. and 3:00 a.m. Both samples indicated an alcohol

3

concentration of 0.132 grams. The officer testified that he had conducted other breath tests on the Intoxilyzer prior to and after the date of Denstaedt's breath test, and the machine appeared to be functioning properly at all times.

In his single enumeration of error, Denstaedt argues that his trial counsel was ineffective because she was unable to admit into evidence print cards from the November 26, 2010 quarterly inspection of the Intoxilyzer 5000. Denstaedt's claim of error fails.

> In order to prevail on his claim of ineffective assistance, [Denstaedt] must show both that counsel's performance was deficient and that the deficiency prejudiced him such that there is a reasonable probability that, but for the deficiency, the outcome of his trial would have been different. This burden, although not impossible to carry, is a heavy one. Moreover, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.

(Citations and punctuation omitted.) *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014). In reviewing a trial court's ruling on an ineffective assistance claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but independently apply the legal principles to the facts. *Holloman v. State*, 293 Ga. 151, 154 (4) (744 SE2d 59) (2013).

4

The record shows that Denstaedt's trial counsel called Matthew Malhiot as an expert witness at trial, and Malhiot was admitted as an expert in the areas of field sobriety evaluations and the Intoxilyzer 5000. Malhiot testified that he reviewed the inspection certificates the State admitted into evidence as well as the print cards generated during the inspection process. When Denstaedt's trial counsel asked Malhiot what he found when he reviewed the supporting data for the inspections, the solicitor objected, asserting that Malhiot lacked personal knowledge, the documents were not in evidence, Malhiot's testimony would be hearsay, and no foundation had been established for the documents' authenticity. Denstaedt's trial counsel then suggested that "perhaps [Malhiot] can lay a foundation as to the business records" and how he came into possession of them. The trial court, however, sustained the solicitor's objection, concluding that Malhiot "would have to be either the custodian or [have] created [the print cards] to be able to testify to business records exception."

At the hearing on the motion for new trial, Denstaedt called the records supervisor for the Duluth Police Department as a witness in order to lay a foundation for admission of copies of the two certificates of inspection introduced into evidence at trial together with the supporting print cards under the business records exception to the hearsay rule. Malhiot testified at the motion for new trial hearing and explained

5

that one of the tests performed during the quarterly inspection is a difference check to ensure the Intoxilyzer's software is able to determine if the difference in the alcohol concentration of two samples is greater than 0.02 grams. Malhiot testified that, to perform the difference check, the inspector prepares a 0.08 gram reference solution, heats it, and delivers a sample of the solution to the instrument through the breath tube. The next sample delivered to the instrument is alcohol free. To pass the difference check, the Intoxilyzer must respond with an error message advising the operator to retest after 20 minutes. Malhiot testified that when the difference check was performed on November 26, 2010, the result for the first sample was 0.075 grams while the second was 0.00 grams. He testified that although the objective of the difference check was satisfied and the proper error message was displayed, the 0.075 reading was outside the range of the Intoxilyzer's calibration standard, which requires a reading between 0.076 and 0.084 for a 0.08 solution.

Malhiot testified that a result outside of the required standard can result from "[m]any different things: the simulator not heated properly, . . . air leaks[,] . . . instrument calibration[,] breath tube leaks[,] internal leaks[, and] three-way valve leaks." Malhiot stated that there was no documented reason the first sample on the difference check was outside of the calibration standards and that "you can't

6

determine the reliability of the results the instrument is producing without an explanation as to the reason for the . . . result." He admitted on cross-examination, however, that the Intoxilyzer passed every test conducted on November 26, 2010 and February 14, 2011. Malhiot also testified that during the difference check conducted on February 14, 2011, the results for the two samples were 0.081 and 0.00.

Denstaedt's trial counsel testified at the motion for new trial hearing that she was familiar with the print cards from the November 26, 2010 inspection and that her strategy with respect to the cards was to use them to show that the results of her client's breath test were unreliable. She testified that she and Malhiot agreed that the card regarding the November 26, 2010 difference check was the strongest basis for the defense in Denstaedt's case. She stated that she did not anticipate that there would be a hearsay objection to Malhiot's testimony about the difference check or that it would be sustained. She testified that in hindsight, she should have subpoenaed the records supervisor. Trial counsel also stated that prior to trial she had a note to herself to have the records custodian under subpoena but did not follow up on that.

The Georgia Supreme Court has held:

In the situation in which an expert personally observes data collected by another, the expert's opinion is not objectionable merely because it is

based, in part, on the other's findings. Even when an expert's testimony is based on hearsay, the expert's lack of personal knowledge does not mandate the exclusion of the opinion but merely presents a jury question as to the weight which should be accorded the opinion.

*Velazquez v. State*, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008). See also *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009) (GBI toxicologist was properly permitted to testify concerning victim's blood alcohol level based on her peer review of testing performed by another GBI employee).[1] In view of these cases, trial counsel reasonably may have failed to anticipate the State's hearsay objection to Malhiot's testimony concerning the print cards from the November 26, 2010 inspection. But even assuming *arguendo* that trial counsel performed deficiently by failing to anticipate the objection or to find a way to overcome it, Denstaedt cannot establish a reasonable probability that, but for such deficiency, the outcome of his trial would have been different.

The print card for the November 26, 2010 difference check showed that the Intoxilyzer's reading of the first sample was only 0.001 outside of the calibration

---

[1] The admissibility of expert testimony in cases tried on or after January 1, 2013 is governed by OCGA § 24-7-703 in Georgia's new Evidence Code. The trial in this case took place on November 5 and 6, 2012.

standards for the instrument. Nonetheless, the objective of the difference check, to identify samples that differ by more than 0.02 grams, was satisfied. See *State v. Carter*, 292 Ga. App. 322, 328-329 (665 SE2d 14) (2008). The Intoxilyzer passed every other test conducted on November 26, 2010, including a calibration check, and every test conducted on February 14, 2011. During the February 14, 2011 difference check, the first sample tested within the calibration standards for the instrument. The record also establishes that on the date of Denstaedt's test, the Intoxilyzer passed a self-diagnostic check and that the arresting officer did not observe any problems with the machine that day or when he used it before and after the date of Denstaedt's test. Although Malhiot testified that there are many *potential* reasons for the slight discrepancy in the difference check on November 26, 2010, he could not identify the actual cause and never stated that he believed the machine's margin of error on the date of testing could have been so great that Malhiot's alcohol concentration, which the Intoxilyzer measured as 0.132 grams, was actually below 0.08. Viewing the record as a whole, we find no reasonable probability that, had the print cards been introduced into evidence, the jury would have concluded that the State presented insufficient proof that Denstaedt's alcohol concentration was 0.08 grams or more. Accordingly, Denstaedt failed to establish prejudice, and the trial court did not err in

9

denying Denstaedt's motion for a new trial. See *Crowe v. State*, 314 Ga. App. 527, 531 (3) (724 SE2d 831) (2012); *Thomas v. State*, 288 Ga. App. 827, 827-828 (655 SE2d 701) (2007).

*Judgment affirmed. Barnes, P. J., Doyle, P. J., Boggs, Ray and Branch, JJ., concur.  McFadden, J., dissents.*

A14A0858. DENSTAEDT v. THE STATE.


McFADDEN, Judge, dissenting.

I respectfully dissent. Trial counsel performed deficiently in failing to present the expert defense witness's opinion that the Intoxilyzer results were unreliable, and there is a reasonable probability that, but for this deficiency, the result of the trial would have been different. See *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014).

The results of Denstaedt's two Intoxilyzer tests provided the only evidence of his blood alcohol concentration, which the state was required to prove to convict him of DUI per se. See OCGA § 40-6-391 (a) (5). At the hearing on Denstaedt's motion for new trial, the expert defense witness testified that, had he been allowed to do so at trial, he would have opined that he had concerns about the reliability and accuracy of Denstaedt's Intoxilyzer results based on the particular machine's performance on a difference check (a quarterly procedure used to gauge certain software performance in the machine). But Densteadt's trial counsel failed to elicit that opinion from the expert at trial, after the trial court sustained the state's objection that the opinion testimony was based on hearsay, namely documents for which no foundation had been laid. Although trial counsel initially had planned to subpoena a records

custodian, she did not do so. In response to the objection, trial counsel tried – unsuccessfully – to lay a foundation for the underlying documents without a records custodian, rather than arguing that the opinion testimony was nevertheless admissible. See *Velazquez v. State*, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008) ("[e]ven when an expert's testimony is based on hearsay, the expert's lack of personal knowledge does not mandate the exclusion of the opinion").

Nothing in the record suggests that trial counsel's inadequate response to the state's objection was strategic. Trial counsel admitted at the hearing on the motion for new trial that she "didn't anticipate that there would be an objection or that the objection would be sustained" and had not considered how she would handle an objection to the expert's opinion. She also testified that her failure to subpoena a records custodian was a mistake. Consequently, she was unprepared either to establish a foundation for the documents upon which the expert's opinion was based or to argue that the opinion testimony was admissible despite being based on hearsay. Because trial counsel was unprepared to contend with an objection to the testimony that she described as "crucial" to the defense, she performed deficiently. See *Ottley v. State*, 325 Ga. App. 15, 19-20 (752 SE2d 92) (2013) (defendant demonstrated that trial counsel performed deficiently where, among other things, trial counsel was

"caught off-guard" at trial by degree to which state's case rested on particular witness and thus was unprepared to cross-examine her).

The deficient performance prejudiced Denstaedt. There is a reasonable probability that the trial court would have allowed the expert witness to testify to his concerns about the reliability of the Intoxilyzer results had trial counsel responded to the state's objection with authority supporting the position that, under the rules of evidence then in effect, an expert witness could base an opinion on hearsay. See *Watkins v. State*, 285 Ga. 355, 258 (2) (676 SE2d 196) (2009); *Velazquez*, supra, 282 Ga. at 875. Because no other evidence pertained to Denstaedt's blood alcohol concentration, there is a reasonable probability that, but for trial counsel's failure to overcome the objection to the expert witness's testimony, the outcome of his trial would have been different.

For this reason, the judgment should be reversed.