**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0469
David William Kelly
v.
The State

On Appeal from the Dougherty County Superior Court
No. 2017SUR1201

Decided: April 21, 2026

PETERSON, Chief Justice.

David William Kelly appeals his convictions stemming from the shooting death of his wife, Diane Kelly.[1] On appeal, Kelly argues that (1) the evidence was insufficient to support his convictions, and the trial court erred by (2) limiting Kelly's voir dire examination of prospective jurors by excluding questions about suicide, (3) failing to rule formally on a hearsay objection,

---

[1] The crimes took place on October 23, 2017. On December 27, 2017, a Dougherty County grand jury returned an indictment charging Kelly with malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and the possession of a firearm during the commission of a felony (Count 4). At a July 2019 trial, a jury found Kelly guilty of all counts. The trial court sentenced Kelly to life in prison without the possibility of parole on Count 1 and a consecutive sentence of five years in prison on Count 4. The remaining counts were vacated or merged for sentencing purposes. In October 2019, Kelly timely filed a motion for new trial, which he later amended in May 2023 with a supporting brief filed in September 2023. The trial court denied the motion following a hearing in September 2025. Kelly timely filed a notice of appeal, and the case was docketed to this Court's term of court beginning in December 2025 and submitted for consideration on the briefs.

1

(4) failing to apply statutory requirements to that hearsay evidence, and (5) admitting irrelevant evidence. Kelly also argues that (6) his trial counsel was ineffective on several grounds. These claims fail, so we affirm.

The trial evidence showed the following.[2] On the early morning of October 23, 2017, Kelly called 911 to report that Diane had shot herself. When officers responded to the house, they found Diane lying on her back in her bed with a gunshot wound to the face and a .44 Magnum in her left hand. Diane had black residue on her left hand, but left no fingerprints on the gun. The gunshot wound was to the left of her nose just below the eye. The air still smelled like gun powder. The responding paramedic testified that he told the officer "somebody put that gun there," because, despite being a former Marine, he had "almost broke[n] [his] wrist shooting" a .44 Magnum, and the recoil was very powerful. The gun was described at trial as "one of the heaviest firearms."

At the scene, a responding officer described Kelly as "calm," sitting on the recliner drinking coffee. Kelly told the officer that he walked his dog early that morning, and when he returned, he discovered Diane had shot herself. The officer noted, however, that it had been raining when he arrived at the house and neither of his dogs appeared or smelled wet. When asked why Diane would commit suicide, Kelly said he did not know but that her mother had recently passed away. When asked if he had any issues with his wife, he said no, but admitted that they had an argument that morning about him joining a band. Kelly told the

---

[2] Because this case involves a question of prejudice caused by assumed deficient performance by trial counsel, we set out the evidence in detail rather than in the light most favorable to the jury's verdict. See *Wood v. State*, 316 Ga. 811, 812 n.2 (2023).

officer that, despite the gun being found in her left hand, Diane was right-handed. The gun belonged to Kelly, who kept the gun with him "all the time." A .38 revolver was found in Diane's car.

The medical examiner determined the cause of death to be the gunshot to the head. Although she could not determine the manner of death, she testified that the location of the gunshot wound (the left-nose area) and the stippling pattern were not typical of suicides by gunshots, which generally involve contact between the muzzle and the skin.[3] The medical examiner said that the stippling in this case showed that the gun was fired at an intermediate range, rather than contact range or distant range.

At trial, the State offered expert testimony that the forensic evidence was inconsistent with a suicide. A GBI ballistics expert, Bryan Smith, testified that 97.2% of suicides involving a firearm are "contact" injuries, meaning the gun is physically touching the injury site. Bruce Willis, another GBI expert, testified that based on the strong recoil of this weapon, it would not have dropped straight down and that it looked "out of place." Additionally, he testified that a .44 Magnum is an unusual gun to use in a suicide, as smaller caliber guns are typically used. Both GBI experts agreed that the injury was not a contact injury and that the gun was approximately 12 inches away from Diane's face, although they did not agree on the exact range of distance.[4] Through a demonstrative aid, the State showed that if Diane had

---

[3] Diane had soot on her left hand, which can indicate that the left hand was in contact with the weapon when it fired or that it was transferred there after the shot. On Diane's right hand, there was an indented area of brown-tone discoloration where her thumb met her palm. In the medical examiner's opinion, the indentation was not necessarily an injury but could be a result of a defensive posture.

[4] Agent Smith testified that the distance was eight to twelve inches, while Agent Willis said that the distance was 12 to 15 inches.

shot herself with the gun at this distance, she would have left a fingerprint on the gun, but no fingerprints were left on the gun. Also, at this distance, it would have required a great deal of pressure to pull the trigger. In Agent Smith's opinion, based on a total review of the evidence, "this case was not consistent with a suicide."

Police found no gunshot residue on Kelly's clothing, nor did they find Diane's blood on Kelly. There were also no signs of struggle at the residence.

Kelly maintained that Diane committed suicide. At trial, Kelly presented testimony from Diane's primary care physician, Dr. Gowdie, who testified that she treated Diane for anxiety and depression beginning in 2013 and prescribed her Zoloft and Xanax. Dr. Gowdie last saw Diane personally in June 2017, where Diane reported increasing anxiety related to separation from her husband due to his alcoholism. On August 28, 2017, Diane called stating she needed to be seen that day because of her depression and anxiety, and she was seen by a physician assistant in Dr. Gowdie's practice and prescribed additional medication. When she was seen at that time, it was noted that Diane had restarted taking Zoloft after stopping the medication several months prior, Zoloft had caused unwanted side-effects and made her symptoms worse, and Prozac and Xanax were prescribed to treat her symptoms. During the time Dr. Gowdie treated Diane from 2013 to 2017, she never reported any physical abuse by Kelly.

Dr. Gowdie briefly mentioned on direct examination that in March 2017, Diane presented with a shoulder injury. On cross-examination, Dr. Gowdie testified in more detail about that injury, stating that during Diane's March 2017 visit, she had left shoulder pain that had persisted for one year and was "worsening." Diane complained of difficulty washing under her arm and putting on deodorant. Dr. Gowdie testified that Diane never mentioned suicidal ideations, and Dr. Gowdie did not believe Diane was capable of suicide because she believed Diane's

depression to be controlled.

Historically, Kelly and Diane had a volatile relationship. Diane's brother, Jerry Suess, testified about a time he witnessed Kelly speak to Diane in a way that "caught [him] off guard," and was "disrespectful." Kelly and Diane's daughter, Kristen Stevens, testified that Kelly was verbally abusive, very selfish, and took Diane for granted. Stevens also testified to the times in the past when Kelly had left her and Diane. Kelly left the family in January 2012, causing the family to lose their house due to a foreclosure, and reunited with the family in October 2012. Kelly left again in May 2017 and resettled in Helen, Georgia. In July 2017, Diane joined him in Helen for two weeks before returning home, telling Stevens that "things were worse than ever." Diane also said that she was heartbroken because Kelly told her that he did not love her anymore.

Diane and Kelly had been seeing Mark Waters, a pastor, about their relationship. Waters testified that in July 2017, Diane asked Waters to come talk to her and Kelly. The two were having relationship issues, because Kelly wanted to leave Albany to begin playing guitar for money. Diane did not want to leave her family in Albany and wanted Kelly to stay in Albany with her.

Kelly did not testify at trial.

1. Kelly argues that the evidence was insufficient to support his convictions as a matter of constitutional due process, stating that the State's case was wholly circumstantial and did not rule out every reasonable hypothesis other than guilt. We disagree.

When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence presented in the light most favorable to the verdicts and ask whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 US 307, 319 (1979). Questions about the weight and credibility of evidence, the inferences to be drawn from it, and the resolution of any conflicts

5

or inconsistencies in the evidence are left to the jury. See *Anderson v. State,* 319 Ga. 56, 59 (2024).

> Due process allows for a conviction to rest on circumstantial evidence alone, but under Georgia statutory law, a conviction that rests only on circumstantial evidence cannot stand unless the evidence "excludes every other reasonable hypothesis save that of the guilt of the accused."

*Lee v. State*, 322 Ga. 44, 56 (2025) (quoting OCGA § 24-14-6; punctuation omitted). "Whether an alternative hypothesis is reasonable, and whether the circumstantial evidence excludes any such hypotheses, are questions for the jury, and we will not disturb the jury's findings unless they are insupportable as a matter of law." Id. (cleaned up).

In this case, the evidence of guilt, albeit circumstantial, was strong. No one else lived with Diane and Kelly at their home, and Kelly reported that Diane had shot herself. The jury was authorized to reject Kelly's claim and instead find him guilty of killing Diane based on the totality of the evidence. In particular, Kelly's gunshot wound was not a "contact" type injury, which is typical in the majority of suicides from gunshot wounds. The State presented abundant evidence about the implausibility of Diane firing the gun. Diane had her own gun, but the gun used was Kelly's, which he claimed to always have on him. Diane was right-handed, but the police discovered the gun in her left hand. Diane had an injury to her left shoulder, which would have made it even more difficult and painful to lift the .44 Magnum and pull the trigger with her left hand. The gun was heavy and had significant recoil. If Diane had been holding the gun at the approximate distance from which the gun was fired, she would have left fingerprints on the gun, but no fingerprints were left. And the gun would likely not have stayed in her hand if she had fired it.

6

Moreover, Diane and Kelly had a volatile relationship, characterized by verbal abuse, financial strain, and instability, and Kelly admitted that they argued on the morning Diane was killed. When police responded to the house on the rainy morning of Diane's death, they found him "calm" and found no evidence to corroborate his claim that he had been walking the dogs on that rainy morning. Lastly, although there was evidence that Diane was suffering from depression, her treating physician testified that he did not believe Diane was suicidal. Given the weight of the circumstantial evidence, the jury was authorized to reject Kelly's self-serving hypothesis that Diane died by suicide and find that there was no reasonable hypothesis save that of Kelly's guilt. See *Adkins v. State*, 314 Ga. 477, 481–82 (2022) (jury authorized to conclude that evidence excluded hypothesis that victim shot herself with a gun and to find defendant guilty of murder where the victim was shot right outside the defendant's bedroom, the defendant and victim had argued the night before the victim's death, the defendant was alone with the victim in the house before her death, the impact wound was not "self-inflicted," and the detective believed it was not a suicide based on his many years of experience).

2.     Kelly argues that the trial court erred by limiting his request to ask prospective jurors certain questions about suicide.[5]

---

[5] On appeal, Kelly argues that the trial court should have allowed the four following questions:
1. Has a family member or friend ever committed suicide?
2. Have you, a family member, or a friend ever attempted to commit suicide?
3. Have you personally ever struggled with depression or suicidal thoughts?
4. Have you ever been personally affected by a suicide or a suicide attempt?

This claim has been affirmatively waived.

When the trial court indicated it was inclined to disallow Kelly's proposed questions, Kelly's trial counsel said that he "simply want[s] to see if the jurors have any practical experience, voluntary or professional experience, dealing with suicide such as counseling and what not[.]"The trial court then said it was more inclined to allow that sort of question, to which Kelly's counsel admitted that "those are area[s] that [he was] most concerned about. And [his initial] question didn't put that the right way … Th[ose] are just proposals to the court[.]"The court then helped craft the appropriate question, and without any objection, trial counsel adopted that question and asked it to the prospective jurors.[6] Because Kelly, through counsel, worked with the trial court to create a question that he believed at the time was more appropriate to address his concerns, he affirmatively waived any claim about the trial court improperly limiting the questions he initially proposed.[7] See *Wallace v. State*, 303 Ga. 34, 37 (2018) ("Affirmative waiver, as opposed to mere forfeiture by failing to object, prevents reversal."). See also *Brandon v. State*, 311 Ga. 258, 259 (2021) (claim that trial court erred in disallowing proposed voir dire question was not preserved for review on appeal where no objection was made and unpreserved claim was not subject to plain error review).

3.      In two related enumerations, Kelly argues that the trial court erred by failing to rule formally on a hearsay objection to Stevens's testimony, and by failing to apply the residual hearsay exception requirements found in OCGA § 24-8-807 ("Rule 807") in admitting that testimony. We disagree.

---

6 Trial counsel asked the prospective jurors, "[I]is there anyone here with any specialized training in the area of mental health disorder concerning the treatment and diagnoses thereof?"

7 After the jury was selected, the trial court asked the parties whether they had any objections to the jury selection process, and both the State and Kelly replied with "[n]o."

8

About five months before trial, the State disclosed Stevens as a witness for trial and filed a notice that it intended to call Stevens as a witness "to testify on her observations and communications with her father and mother around the time of the alleged crimes." On the first day of trial, the State confirmed that it would call Stevens to testify about conversations with her mother. Kelly made a general hearsay objection to Stevens's testimony, arguing that the testimony "is a necessity exception and I have not been given any notice of it." The trial court reserved ruling on the matter until the issue came up at trial. Before Stevens testified, Kelly renewed his hearsay objection, and the court allowed the State to call her as a witness. As Stevens began to testify as to whether her mother told her why she returned home after staying with Kelly for two weeks in Helen, Kelly objected on hearsay grounds. The trial court overruled this objection, and Stevens testified that Diane returned from visiting Kelly because "things were worse than ever," and Diane was "heartbroken" because Kelly told Diane that he "didn't love her anymore." Stevens stated that Diane had made these statements to her via text messages, but she did not retain all of them.

With respect to Kelly's claim that the trial court erred by not formally ruling on his hearsay objection, the record clearly belies his claim. The trial court ultimately ruled on his objection when necessary to do so. There is no merit to Kelly's suggestion that the trial court should have preemptively excluded Stevens's testimony. As the trial court noted in denying Kelly's motion for new trial, Kelly did not prior to Stevens's testimony identify any specific hearsay statements to be excluded or ask for a proffer of her testimony to demonstrate areas of possible concern. Without this specific information, the trial court lacked sufficient information to rule on a preemptive objection. See generally *Atkins v. State*, 310 Ga. 246, 250–51 (2020) (noting that whether

9

one of several hearsay exceptions would apply would depend on the circumstances surrounding the statement).

As to the specific hearsay objection that was ruled upon during Stevens's testimony, even if the argument Kelly makes on appeal was preserved for ordinary appellate review,[8] it fails. Under ordinary appellate review, a trial court's admission of evidence is reviewed for abuse of discretion. See *Jacobs v. State*, 303 Ga. 245, 250 (2018). We are "particularly hesitant to overturn a trial court's admissibility ruling under the residual hearsay exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *State v. Holmes*, 304 Ga. 524, 529 (2018).

Rule 807 provides in relevant part:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that: (1) The statement is offered as evidence of a material fact; (2) The statement is more probative on the point for which

---

[8] At trial, Kelly seemed to suggest that the "necessity exception" applied and argued only that he had not been given notice. But the "necessity exception" was an exception to the hearsay rule under the old Evidence Code, and this exception was not carried over into the current Evidence Code. See *State v. Kenney*, 315 Ga. 408, 417 n.14 (2023). He did not specifically argue the Rule 807 grounds that he raises on appeal. See *Payne v. State*, 313 Ga. 218, 221–22 (2022) (defendant's argument that other-acts evidence did not meet the criteria under OCGA § 24-4-404(b) was subject to plain error review where he argued below only that he was not given the requisite notice). In his brief, Kelly seems to acknowledge that the objection he made is different than the argument he makes on appeal, as he states that plain error review applies to this claim.

it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence[.]

*Holmes*, 304 Ga. 529 (citing OCGA § 24-8-807). This exception is to be used "very rarely and only in exceptional circumstances, and only when there exists certain exceptional guarantees of trustworthiness and high degrees of probativeness and necessity." *Davenport v. State*, 309 Ga. 385, 390 (2020) (quotation marks omitted).[9]

Here, the trial court did not abuse its discretion in concluding that Diane's statements to Stevens were sufficiently trustworthy given that Stevens said that she and Diane were "best friends" and Diane shared personal details about her relationship with Kelly. See *Ash v. State*, 312 Ga. 771, 783, 785–86 (2021) (victim's statements to the witness had "sufficient guarantees of trustworthiness" because the two were "best" friends whose relationship continued until the victim's death and the statements concerned conflict between the victim and the defendant (quotation marks omitted)). See also *Jacobs*, 303 Ga. at 249 (statements of personal or family history generally exhibit guarantees of trustworthiness).

Regarding materiality, Kelly focuses only on Diane's statement that Kelly told her he "didn't love her anymore." But he ignores the rest of Diane's conversation with Stevens in which

---

[9] Rule 807 also requires the proponent of the evidence to give notice of intent to introduce the evidence "sufficiently in advance of the trial." OCGA § 24-8-807. Although Kelly raised the issue of proper notice below, he does not make the argument here.

she reported that things with Kelly were "worse than ever." The entirety of Diane's conversation with Stevens showed the nature of her deteriorating relationship with Kelly, which was a central issue in the case. Therefore, the materiality requirement of Rule 807 was met. See *Williams v. State*, 322 Ga. 710, 713 (2025) ("[A] victim's own words about the nature of her relationship with the defendant and her statements to others that shed light on the relationship between the defendant and the victim meet Rule 807's materiality requirement[.]" (cleaned up)); *Shellman v. State*, 318 Ga. 71, 77–78 (2024) (the murder victim's journal entries describing the nature of her relationship to the defendant, including note that the defendant "no longer love[d] [her]," shed light on defendant's motive and, therefore, met materiality requirement).

As to the statement's probative value, the trial court found in its order denying Kelly's motion for new trial that Diane's communications to Stevens were more probative than other evidence that could be procured through reasonable efforts because of the very close relationship between Diane and Stevens and because Diane confided in Stevens about her strained relationship with Kelly. Although two other witnesses also generally described the marital strife between Kelly and Diane, none of them were as familiar with Diane and Kelly's relationship. Kelly argues that the second element was not met because Stevens's testimony about Diane's statement (that Kelly "didn't love her anymore") was not more probative on the point than the text message in which Diane communicated that statement to Stevens. But although Stevens testified that she still had some text messages from her mother, she testified that she no longer had the message from Diane about Kelly not loving her anymore.

12

Kelly makes no argument that the interests of justice were not best served by the admission of Diane's statements. As a whole, Kelly fails to make a "definite and firm" showing that the trial court made a "clear error of judgment" in admitting the evidence under Rule 807.[10] *Holmes*, 304 Ga. at 529.

4.      Kelly next argues that the trial court abused its discretion in allowing Stevens to testify that she was not yet a mother when Diane died, because the evidence was irrelevant and prejudicial. We disagree.

Evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401 (emphasis added). Consistent with this plain text, the standard for relevance is a liberal one, and relevant evidence is generally admissible even if it has only slight probative value. *Carter v. State*, 317 Ga. 689, 693 (2023). Relevant evidence may still be excluded when "its probative value is substantially outweighed" by, among other things, "the danger of unfair prejudice." OCGA § 24-4-403 ("Rule

---

[10] To the extent Kelly complains that the trial court failed to consider all of the criteria for admissibility under Rule 807 because the State did not make a proffer of evidence under OCGA § 24-1-103 and the trial court did not make express factual findings in admitting the hearsay testimony, this claim fails. OCGA § 24-1-103 governs the preservation of claims related to evidentiary rulings and requires an offer of proof only when evidence is *excluded*. See OCGA § 24-1-103(a). The trial court explained its reasoning for admitting the evidence in denying Kelly's motion for new trial, and no authority required the trial court to make on-the-record, contemporaneous determinations in admitting the hearsay evidence. See *Smith v. State*, 311 Ga. 288, 291–92 (2021) (no merit to claim that trial court abused its discretion in admitting hearsay evidence based on lack of explicit determinations that each requirement of Rule 807 was met).

13

403"). The exclusion of evidence under Rule 403 is "an extraordinary remedy that should be used only sparingly." *Carter*, 317 Ga. at 693 (quotation marks omitted).

Here, Stevens's testimony about how she was not a parent at the time her mother died and that her mother, with whom she was "best friends," wished to be a grandmother was relevant because it made it more probable that Diane had more to live for — to see Stevens become a mother — and, therefore, less probable that she would have committed suicide. Thus, this testimony was relevant.

Although Kelly states that the evidence was prejudicial, he offers no meaningful argument as to how any prejudice was "unfair." Evidence has an "unfair" prejudicial effect when "it has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged, or an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Carter*, 317 Ga. at 694 (quotation marks omitted). Kelly put the possibility of Diane's death being a suicide squarely before the jury, and he has not explained how evidence that went to that issue was "unfairly prejudicial," much less shown that any unfair prejudice substantially outweighed the probative value of the evidence. See id. Thus, Kelly has failed to carry his burden of establishing error in the admission of this testimony.

5. Kelly argues that trial counsel was ineffective on several grounds. None of these grounds have merit.

To prevail on any of his claims, Kelly must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 US 668, 687 (1984). To establish deficient performance, Kelly must "overcome the strong presumption that

14

counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*, 304 Ga. 851, 855 (2019) (quotation marks omitted). Counsel's performance is analyzed under an objective reasonableness standard and is not limited to subjective reasons offered by counsel for her conduct. See *Lane v. State*, 312 Ga. 619, 623 (2021). To demonstrate prejudice, Kelly must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mims*, 304 Ga. at 855 (quotation marks omitted). The failure to meet either of the prongs is fatal to an ineffectiveness claim. See *Smith v. State*, 296 Ga. 731, 733 (2015). In considering an ineffectiveness claim, we review a trial court's factual findings for clear error and its legal conclusions de novo. *Lawrence v. State*, 286 Ga. 533, 534 (2010).

(a)     Kelly argues that trial counsel was ineffective for failing to object to Stevens's hearsay testimony that Diane said she wanted Kelly to "get better." In providing this testimony, Stevens was describing how Diane wanted Kelly to "get better" after he had become more irritable after sustaining an injury that prevented him from working. Kelly has failed to show that trial counsel's decision not to object was unreasonable.

"[C]ounsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Daughtie v. State*, 297 Ga. 261, 266 (2015) (quoting *Strickland*, 466 US at 690). At the hearing on his motion for new trial, Kelly did not ask trial counsel why they did not raise a hearsay objection to the testimony at issue. "[W]hen trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was

15

reasonable." *Shaw v. State*, 292 Ga. 871, 876 (2013) (quotation marks omitted). And Kelly has not overcome this presumption here.

In his brief, Kelly suggests that the decision not to object was unreasonable because it allowed the State to establish his "intent, motive, and state of [m]ind." But trial counsel argued to the jury that Diane's death was likely to be suicide because she battled depression, which was made worse due to her strained relationship with Kelly that had become worse right before her death. Because the testimony at issue in some ways helped the defense theory that trial counsel was advancing, Kelly has not shown that his trial counsel was deficient in this regard. See *Harrison v. State*, 309 Ga. 747, 751–52 (2020) (no deficient performance from failure to raise hearsay objection when testimony supported defense theory). See also *Mitchell v. State*, 290 Ga. 490, 492 (2012) ("The decision not to object to certain hearsay or to leading questions is often the result of reasonable trial strategy. Because Appellant has not made a contrary showing, he has failed to show deficient performance." (quotation marks omitted)).

(b) Kelly next argues that trial counsel was ineffective for failing to object on the right grounds to Stevens's testimony regarding what Diane had said about not having to take her mother off life support when she was in the hospital.[11] Rather than object to the testimony on speculation grounds, as trial counsel had, Kelly argues that trial counsel should have lodged an objection on hearsay and relevancy grounds. This claim has no merit.

Even if, as Kelly argues, the testimony helped establish the close relationship between Diane and Stevens, Stevens had

---

[11] Stevens testified that after Diane's mother had been in the hospital and passed away, Diane told Stevens "that she was thankful that they didn't make the decision to pull the plug, that the Lord took her away before they had to do that."

already testified that she and Diane were "best friends." Diane's feelings about her mother's death did not implicate Kelly in any way or impair his defense. The statement was fairly innocuous and was not the focus of the State's case against Kelly.

Thus, even if we assume that trial counsel's failure to lodge a more appropriate objection was objectively unreasonable,[12] Kelly has not established a reasonable probability that the outcome of his trial would have been different where the only seeming prejudice resulting from the testimony was to establish the close relationship between Diane and Stevens, which was established by other evidence, and the evidence of guilt, as outlined in Division 1, was strong. See *Henderson v. State*, 304 Ga. 733, 738 (2018) (no reasonable probability that the outcome of defendant's trial would have been more favorable had the jury been prevented from hearing hearsay statements where evidence against defendant was strong); *Marshall v. State*, 297 Ga. 445, 449 (2015) ("When counsel's alleged deficient performance is the failure to object to hearsay evidence, such an error may not warrant a new trial when the hearsay testimony is merely cumulative and when it is highly probable that its admission did not contribute to the guilty verdict." (cleaned up)).

(c) Kelly also argues that trial counsel should have objected to certain "hearsay" testimony by Suess regarding his conversation with Diane. But the only statement Kelly identifies as coming from Diane is her question, "Why?" in response to Suess's question as to whether Kelly always talked to her in a disrespectful way. Kelly fails to show how Diane's question

---

[12] But see *Momon v. State*, 322 Ga. 848, 851 (2025) ("A competent attorney need not make every objection that would be sustained, so a defendant alleging ineffective assistance must show that not objecting to certain testimony was a 'patently unreasonable' strategy[.]" (cleaned up)); *Najarro v. State*, 319 Ga. 868, 872 (2024) (failure to object to evidence not prejudicial to defendant does not support a finding of deficient performance).

17

constituted hearsay, as Diane was not asserting anything by it. See OCGA § 24-8-801(c) ("'Hearsay' means a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."). Thus, trial counsel was not deficient for failing to object on hearsay grounds.

To the extent Kelly argues that trial counsel should have objected to Suess's opinion testimony about the disrespectful way Kelly had talked to Diane, this claim also has no merit.

OCGA § 24-7-701(a) ("Rule 701(a)") "allows lay witness testimony in the form of opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge." *Bullard v. State*, 307 Ga. 482, 491 (2019) (quotation marks omitted). Suess's testimony regarding the way Kelly had spoken to Diane was based on his personal observations of the conversation, and Suess did not need any specialized training or knowledge to conclude that Kelly was speaking to Diane in a disrespectful way. And Suess's testimony was helpful to the jury because it showed the nature of Kelly and Diane's deteriorating relationship and helped the jury determine whether Kelly may have shot Diane. See *Crawford v. State*, 322 Ga. 622, 633 (2025) (witness's opinion testimony that the defendant was angry was admissible where it was based on familiarity with the defendant and helped the jury understand the crime's surrounding circumstances and the defendant's motive); *Mitchell v. State*, 320 Ga. 673, 679 (2025) (witness's lay opinion testimony, which was based on his familiarity with the defendant, was admissible under Rule 701(a) because, among other things, it helped the jury determine "a fact in issue" (quotation marks omitted)); *Gude v. State*, 313 Ga. 859, 868 (2022) (witness's testimony about her

belief that the victim was scared or upset was admissible because it was based on her perceptions of text message conversations with the victim and her close personal relationship with him).

Kelly acknowledges that a witness may offer opinion testimony based on the witness's own experience and observation, but argues that Suess's opinion testimony was improper because he did not describe Kelly's statements that he found to be disrespectful. He offers no relevant authority for this proposition.[13] Because he has not shown that an objection to Suess's opinion testimony would have been successful, he has not established that trial counsel was deficient for failing to object. See *Lynn v. State*, 310 Ga. 608, 617 (2020) ("The failure to make a meritless objection is not deficient performance." (cleaned up)).

(d)     Kelly also argues that trial counsel should have objected to Stevens's lay opinion testimony that Kelly was verbally abusive, selfish, and took her mother for granted. Kelly argues that the State failed to establish that Stevens's opinion testimony was based upon her own experience and observations, because she did not testify as to any underlying facts that supported her opinion and failed to describe what she meant by being verbally abusive and selfish. These challenges fail.

Like Suess's opinion testimony, Stevens's testimony was (1) based on her own perceptions through her long relationship to Diane and Kelly (as their daughter who lived with them); (2) helpful to the jury to understand Stevens's perception of Diane and Kelly's relationship, which was crucial for determining whether he killed her or she committed suicide; and (3) not based on scientific, technical, or other specialized knowledge. As a

---

[13] Kelly cites a 1935 case from the Court of Appeals, *Bailey v. Newberry*, 52 Ga. App. 693 (1935). But that case applied the old Evidence Code, while the current Evidence Code took effect in 2013 and applied to Kelly's trial. *Bailey* has no application here.

19

result, Stevens's testimony was admissible under Rule 701(a), just like Suess's testimony, so trial counsel was not deficient for failing to make a meritless objection to this testimony. See *Lynn*, 310 Ga. at 617.

(e)　Kelly argues that trial counsel was ineffective because they failed to interview some of the State's named witnesses, resulting in trial counsel being unprepared for trial. Although Kelly notes that trial counsel failed to interview eight of the State's listed witnesses, his argument focuses only on trial counsel's failure to interview Stevens, Suess, Agent Smith, and Agent Willis.[14] But, at best, Kelly preserved only his claim that trial counsel that was ineffective for failing to interview Suess.

In his motion for new trial, as amended, after providing lengthy arguments as to several of his ineffectiveness claims, Kelly stated in passing that trial counsel failed to interview witnesses, but did not identify any particular witnesses. At the motion for new trial hearing, Kelly argued briefly about trial counsel's failure to interview Suess, but not as an independent claim. Instead, his assertion was part of his argument that trial counsel should have been aware of what Suess intended to testify about and, therefore, should have been ready to object to Suess's "disrespectful" statement at trial. At no point did Kelly argue that trial counsel was ineffective for failing to interview Stevens, Agent Smith, or Agent Willis. Therefore his claim related to these witnesses was not preserved for appellate review. See *Jones v. State*, 294 Ga. 501, 503 (2014) (holding that a bare assertion of ineffective assistance of trial counsel in an amended new trial motion, "with no additional detail or argument," including any argument at the motion for new trial hearing, was insufficient to

---

[14] The State notes that that not all of the listed witnesses were actually called at trial.

20

raise such a claim and preserve it for review on appeal).

With respect to his claim related to interviewing Suess, the record does not clearly show whether or not trial counsel interviewed him prior to trial.[15] Even if trial counsel did not interview Suess and was deficient in this respect, Kelly makes no argument as to what difference it would have made. At the motion for new trial hearing, Kelly argued only that the lack of an interview prevented trial counsel from successfully challenging Suess's testimony that Kelly had been "disrespectful" to Diane. But as we held above in Division 5(c), Suess's testimony was admissible. Although Kelly argues that trial counsel could have conducted a more "meaningful and thorough cross-examination of witnesses" had he been prepared, he does not argue, much less show, that trial counsel would have taken a different strategy if he had interviewed Suess prior to trial or how this different approach was reasonably likely to lead to a different outcome at trial. Therefore, this claim fails. See *Harris v. State*, 314 Ga. 370, 374 (2022) ("A defendant claiming that his counsel was underprepared must show that more preparation might have produced something that would have made a difference in the outcome of his trial." (cleaned up)).

(f)    Kelly also argues that trial counsel was unprepared for Dr. Gowdie's testimony, because trial counsel failed to review the medical records with Dr. Gowdie before she took the stand.

---

[15] One of Kelly's trial attorneys said he "potentially" talked to Suess, but could not recall, while Kelly's other trial attorney was not asked whether he had or hadn't talked to Suess. The trial court made no express credibility findings regarding this testimony. Although we sometimes presume that a trial court made implicit credibility findings necessary to support its ruling, see *Vendrel v. State*, 318 Ga. 233, 240–41 (2024), the trial court in this case resolved the issue on prejudice; because any credibility findings would not have been relevant to such a conclusion, we do not assume the court made any.

Kelly has failed to show that trial counsel was deficient.

"[D]ecisions about which witnesses to call at trial are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." *Roseboro v. State*, 308 Ga. 428, 437 (2020) (quotation marks omitted). See also *Muller v. State*, 284 Ga. 70, 72 (2008) ("In the realm of specific decisions regarding trial strategy, and in particular decisions about which witnesses should be called to testify, defense attorneys are afforded wide discretion.").

Here, in reporting the shooting, Kelly said that Diane shot herself. At the time of the shooting, Kelly said he did not know why Diane would have shot herself. Dr. Gowdie was the only witness who testified about Diane's history of depression and anxiety, which Kelly used to support his suicide defense. At the motion for new trial hearing, trial counsel testified that he had reviewed the medical records with several other attorneys, briefly interviewed Dr. Gowdie before trial, and weighed the pros and cons of calling each witness. Additionally, Dr. Gowdie's testimony was proffered outside the presence of the jury, so trial counsel was fully aware of what Dr. Gowdie would testify to before she was called as a witness. Kelly's claim that trial counsel was unprepared for and, therefore, unaware of Dr. Gowdie's testimony is belied by the record. To the extent that Kelly argues that trial counsel was deficient for nevertheless calling Dr. Gowdie as a witness, although certain aspects of Dr. Gowdie's testimony were unfavorable to Kelly's defense, trial counsel's decision to call Dr. Gowdie as a witness was not patently unreasonable. See *Watkins v. State*, 285 Ga. 355, 357–58 (2009) (trial counsel's decision to call a detective as a witness was not so unreasonable as to constitute deficient performance even though the detective gave some unfavorable testimony); *McKenzie v. State*, 284 Ga. 342, 348 (2008) (defendant's disagreement with trial counsel's trial tactics and strategy does not require a finding that trial counsel was

22

ineffective). Therefore, this claim fails.

(g) Kelly next argues that trial counsel was deficient for failing to consult with an independent expert to analyze the State's autopsy report and the ballistics and crime scene reconstruction evidence, and that this deficiency prejudiced him because trial counsel did not conduct an adequate cross-examination of the witnesses who testified about these matters. But Kelly did not raise this claim in his motion for new trial or argue the issue at the motion for new trial hearing. Although Kelly questioned counsel about these matters at the motion-for-new-trial hearing, "questioning during the motion-for-new-trial hearing, by itself, is insufficient to amend a motion for new trial to add a claim where the trial court did not rule on the claim." *Allen v. State*, 317 Ga. 1, 12–13 (2023) (quotation marks omitted). See also *Jones*, 294 Ga. at 503 (holding that a bare assertion of ineffective assistance of trial counsel in an amended new trial motion, "with no additional detail or argument," including any argument at the motion for new trial hearing, was insufficient to raise such a claim and preserve it for review on appeal). Accordingly, we do not consider it.

(h) Kelly argues that the cumulative prejudice of his trial counsel's deficiencies deprived him of a fair trial. See *Allen*, 317 Ga. at 13. We disagree.

We assumed trial counsel was deficient for making the wrong objection to Kelly's testimony about Diane's hearsay statement about not taking her mother off life support and for not interviewing Suess prior to trial. We concluded that Kelly failed to produce any evidence that he was prejudiced by any individual deficiency, so there is no prejudice to aggregate. See *Allen*, 317 Ga. at 13 (because the defendant failed to "introduce the sort of

23

evidence necessary to show that he was prejudiced in any way," there was no prejudice to accumulate). Therefore, this claim fails.

*Judgment affirmed. All the Justices concur, except Warren P.J., not participating.*